(November 7, 1923.)

## EMMETT IRRIGATION DISTRICT, Respondent, v. JOHN McNISH, Appellant.

[220 Pac. 409.]

TITLE TO ACT—REFUNDING BONDS OF IRRIGATION DISTRICT—ACCUMULATED INDEBTEDNESS SUBJECT TO REFUNDING.

1. It is too late to question the sufficiency of the title of a statute after the statute has been incorporated in the general code of laws of the state by legislative enactment.

2. *Held,* that C. S., sec. 4375, authorizing an irrigation district to refund its bonded indebtedness, does not impair the obligation of any contract in question in this case.

3. C. S., sec. 4375, provides that as a prerequisite to the issuance of refunding bonds by an irrigation district, "there shall not be funds in the treasury of such district available for the payment and redemption of such bonds and the accrued and unpaid interest thereon." This language authorizes the refunding of the total debt arising from the original bond issue, including accumulated unpaid interest thereon, judgments on such unpaid interest, and interest on such judgments.

4. C. S., sec. 4375, authorizes an irrigation district to issue refunding bonds as a single issue and a single series, notwithstanding the fact that the bonds thus refunded matured serially.

APPEAL from the District Court of the Seventh Judicial District, for Gem County. Hon. Ed. L. Bryan, Judge.

Action for confirmation of proceedings of board of directors of irrigation district *in re* issuance of refunding bonds. Judgment for plaintiff. *Affirmed.*

R. B. Ayers and Richards & Haga, for Appellant.

The refunding act of 1915 is unconstitutional, in that the title embraces more than one subject and matters properly connected therewith and the subjects are not expressed in the title. (Const., art. 3, sec. 16; *Turner v. Coffin,* 9 Ida. 338, 74 Pac. 962.)

The refunding act of 1915 impairs the obligation of the bondholders' contract. (Art. 1, sec. 16, Ida. Const.; art. 1,

38 Idaho.—16

sec. 10, U. S. Const.; *Louisiana v. Pilsbury,* 105 U. S. 278, 26 L. ed. 1090.)

The refunding statute does not authorize the issuance of refunding bonds to refund obligations represented by over-due interest coupons, judgments obtained on such coupons or interest on such judgments. (*City of Cincinnati v. Guckenberger,* 60 Ohio St. 533, 54 N. E. 376.)

The board of directors was without power to issue the re-funding bonds as a single series and a single issue. (C. S., art. 6, tit. 33, secs. 4360, 4375, 4377.)

J. P. Reed and Rice & Bicknell, for Respondent.

Where a statute has been incorporated in the general code of laws of the state, it is too late to raise the objection that the title to the original act was insufficient under Const., art. 3, sec. 16. (36 Cyc. 1068; *Anderson v. Great Northern Ry. Co.,* 25 Ida. 433, Ann. Cas. 1916C, 191, 138 Pac. 127; *Curoe v. Spokane & Inland Electric Ry. Co.,* 32 Ida. 643, 186 Pac. 1101.)

The statute authorizing the refunding of irrigation district bonds did not impair the obligation of any contract. (*Board of Commrs. v. National Life Ins. Co.,* 90 Fed. 232, 22 C. C. A. 591; *Board of Commrs. v. Society for Savings,* 90 Fed. 233, 32 C. C. A. 596.)

The expression "bonded indebtedness" in its ordinary and generally accepted sense means not only the principal amount named in the bond, but also accrued interest, and C. S., sec. 4375, clearly contemplates the refunding of accrued and unpaid interest as well as the principal of the bonds to be refunded. (1 Words & Phrases (1st ed.), p. 835; *Park v. Chandler,* 114 Ga. 466, 40 S. E. 523; C. S., sec. 4375.)

Under the express provisions of the refunding act, the board of directors of an irrigation district is authorized to determine by resolution whether the bonds will be issued in one or more series and one or more issues, and the resolution adopted in this case was in full compliance with the statute. (C. S., sec. 4377.)

T. BAILEY LEE, Commissioner.   The Emmett Irriga-
tion District, respondent, organized in 1910, issued and sold
its six per cent interest coupon bonds in the principal sum
of $898,600.   Thereafter, an extended litigation over the
validity of the issue was finally determined in its favor.
But during the *interim,* no payments having been made, the
original indebtedness had been increased to $1,208,200 by
reason of overdue interest, judgments therefor, and legal
interest on such judgments.

To dispose of this accumulated burden, the district's
board of directors, pursuant to the provisions of C. S., sec.
4375, on Nov. 3, 1921, duly adopted a resolution calling a
special election of the district's qualified voters to author-
ize the issuance of refunding bonds in such total sum.   The
election was regularly held, the issue authorized, the assess-
ment had, the list of apportionment and distribution of
benefits made, and a resolution passed by the board directing
the issuance of such bonds in manner, condition and form:
all in endeavored compliance with the provisions of C. S.,
art. 6, tit. 33.   The resolution directed that the bonds "be
issued in one or more series as may hereafter appear to be
for the best interests of said district and the president and
secretary of the district are hereby authorized, empowered
and directed to ascertain forthwith whether said refunding
bonds may be exchanged for the bonds and coupons to be
refunded, and if such exchange can be effected then said
refunding bonds shall be issued as one issue and as speedily
as may be."

Subsequently, the directors filed in the district court of
Gem county their petition praying the court's confirmation
of all of the aforesaid proceedings.   To this petition the
appellant, an occupying owner within the district, inter-
posed his demurrer generally attacking the petition's suffi-
ciency.   The demurrer was overruled, demurrant refused to
plead further, findings and decree were entered in favor of
respondent, and from this decree the demurrant has ap-
pealed.

Six specifications of error are urged as follows:

1. The district court erred in not holding and deciding that the refunding act of 1915 was unconstitutional because of an insufficient title under section 16 of art. 3 of the Idaho constitution.

2. The district court erred in not holding and deciding that the said refunding act of 1915 was a law impairing the obligation of contracts in violation of the state and federal constitutions.

3. That the learned district court erred in holding and deciding that refunding bonds could be issued by an irrigation district to refund accrued interest upon the bonds of said district where the coupons in question had not been placed in judgment and more than five years had elapsed since the interest represented by such coupons became due.

4. That the court erred in holding and deciding that refunding bonds could be issued by an irrigation district to refund interest accrued upon judgments obtained on overdue interest coupons.

5. That the court erred in holding and deciding that refunding bonds could be issued by an irrigation district to refund obligations represented by judgments obtained on overdue interest coupons.

6. That the learned district court erred in holding and deciding that an irrigation district board could issue refunding bonds as a single issue and a single series, notwithstanding the fact that the bonds refunded matured serially.

Inasmuch as the act of 1915 complained of in the first specification had at the time of the bond issue been incorporated in the state codes by legislative enactment, any defect in its title had become immaterial; and, irrespective of any title whatsoever, it had become a substantive part of the law of the land. In *Anderson v. Great Northern Ry. Co.,* 25 Ida. 442, Ann. Cas. 1916C, 191, 138 Pac. 127, the court unequivocally announced that it is too late to question the sufficiency of the title of an original statute adopted prior to codification, when such statute has subsequently been incorporated in the general code of laws. Moreover,

the insufficiency urged is not apparent. The original act was captioned "An act to enable irrigation districts to refund their bonded indebtedness." It then proceeded to specify the steps logically necessary to effect the declared purpose of the act itself. The bond election, assessment, apportionment and distribution of benefits, and the final resolution of the board provided for are all intimately and unavoidably related to the general object, and cannot be differentiated therefrom. (*Pioneer Irr. Dist. v. Bradley,* 8 Ida. 310, 101 Am. St. 201, 68 Pac. 295.)

Neither does the act impair the obligation of any contract. It does not undertake to force the refunding bonds upon the holders of the bonds refunded; and, if it did, appellant is in no position to complain. He has no contract to be impaired. It is a matter wholly concerning the district and the original bondholders who may deal with each other as they please. (*Board of Commrs. v. National Life Ins. Co.,* 90 Fed. 232, 32 C. C. A. 591.)

Specifications 3, 4 and 5 may be discussed together: the question briefly stated by appellant being "whether or not an irrigation district under the refunding statute is authorized to issue refunding bonds to pay accrued interest which is in default because of the failure of the district board to levy the necessary assessments; and, in the event that such power is found, whether or not it extends to paying interest upon judgments as well as the judgments themselves."

This necessitates a definition of the term "bonded indebtedness" as contemplated by the framers of the statute. It is clear that as a prerequisite to the issuance of such refunding bonds, *"there shall not be funds in the treasury of such district available for the payment and redemption of such bonds and the accrued and unpaid interest thereon."*

Such language manifestly recognizes the debt in its totality, and admits no construction that would divorce the accrued interest from the principal. The original bonded debt by reason of accruing interest and legally imposed incidents simply grows into a larger debt. The fact that

a claim for accrued interest has been reduced to judgment creates no new or separate debt. Nor does the law imposing an interest rate on judgments establish a different or independent liability; they are all offspring of the same dam. At the time the act was passed, the legislators well knew that nonpayment of interest at maturity would in the usual sequence of business entail lawsuits resulting in interest-bearing judgments, and thus knowing that an original bonded indebtedness might through misfortune or neglect develop into a burden, the liquidation of which by direct assessments could prove disastrous, they formulated the act of 1915, with the evident purpose of enabling an embarrassed district to clean up its mess, bag and baggage, and make a fresh start.

There is no merit in the last specification of error. The statute fully authorizes the resolution complained of. No prejudice or confusion can flow from it; and it enables the board to effect a possible settlement with the bondholders without the expense of advertising and selling a multitudinous series of bonds.

The judgment of the trial court should be affirmed.

Budge, C. J., and McCarthy, Dunn and Wm. E. Lee, JJ., concur.

PER CURIAM.—The above and foregoing opinion is hereby adopted as the opinion of the court. The judgment of the lower court is affirmed. Costs awarded to respondent.